The Court,

Harrington, Ch. J.,

charged, the jury: This is an action of ejectment brought by the heirs of Caleb Rodney to recover a house and lot in Lewes, and both parties claim title under Isaac Turner; the plaintiff, by virtue of a sheriff’s deed for the premises, sold to Rodney under a judgment recovered by him against Turner in 1835, and the defendant, under a mortgage from the latter to John Milby and Hannah his wife, and Mary Turner, executed and acknowledged prior to the judgment, and as far back as the year 1808, and as the tenant of Mary Turner, of whom he rents the property. It appears from the evidence that Isaac Turner owned the house and lot, and for many years before his death, in 1841, occupied it with his two daughters, one of whom was married to J ohn Milby, the other remaining single, and that they lived in it prior to 1808 and to the date of the mortgage, the daughters nearly or quite all their lives. How they were in possession, and especially during the latter part of the time, it will be important for the jury to determine with reference to the title of the parties now claiming the property.
It is admitted on both sides that prior to the month of January, 1808, Turner owned the property and was in possession of it. On the ninth of that month he mortgaged the premises to John Milby and wife arid Mary Turner, his children, for $600, payable in seven years—that is to say, in 1815. The effect of this mortgage, if it was re *325 corded within twelve months from its date, was to create a lien on the property for the amount of money designed to be secured by it, and after it fell due and was unpaid, to give the mortgagees a right to foreclose the mortgage and sell the property for the payment of it, or to turn the mortgagor out of possession by ejectment, if he was then^ in possession. In regard to the recording of the mortgage, we have to say to you that the law then in force on the subject allowed it to be recorded within one year from the ■ execution of it, but did not require the recorder, as at the present time, to enter upon the record the time of recording it. But as the mortgage was executed many years ago, and appears from the record to have been recorded at an early day, we deem it the duty both of the Court and the jury, under the circumstances, to presume that it was recorded within the time prescribed by the act, as a contrary assumption would impute to the recorder a breach of his duty and a violation of the law in recording it after-wards.
If, however, the children were in possession of the property as mortgagees after the money was due, they had a right to keep the possession even as against the father, whose title was by this breach of the condition of his mortgage turned into a mere right of redemption on payment of the money. The possession therefore subsequent to 1815, and particularly after 1835, a period of twenty years having intervened, is a fact of material importance in the case; because if Milby and his wife, and Mary Turner, or either of them, were in possession of the property after 1815, claiming under the mortgage, the money not being paid, Isaac Turner himself, if now living, could not put them out by ejectment, and, of course, no one claiming his title by virtue of a sale on a judgment recovered subsequent to the execution of the mortgage can do it. If such was the case, all the right which Caleb Rodney acquired by virtue of the sheriff’s sale on his judgment against Isaac Turner, the mortgagor, was merely a right to redeem the property by the payment of the mortgage debt, but which *326 was not sufficient to sustain an action of ejectment against a mortgagee in possession. But notwithstanding the fact that the mortgage was executed in 1808, long before the recovery of the judgment by Caleb Rodney against Isaac -Turner for $208.95, which was- on the 19th of October, 1835, on which the premises were sold and bought by Rodney, in April, 1836, and also the fact that the mortgage was forfeited by the non-payment of the money long before the judgment was obtained, if the children of Turner, or either of them, were not in possession of the premises as mortgagees under the mortgage, but the mortgagor, the father, was still in possession as the owner up to the time of his death, in 1841, then the sale and conveyance of the property by the sheriff, under the judgment to Rodney, would pass the title to him subject to the mortgage,-and the plaintiff would be entitled to recover it in the present action of ejectment.
A mortgage, as between the mortgagor and mortgagee, so long as the former continues in possession of the mortgaged premises, is merely a security for the payment of money, and does not absolutely convey the legal title to the premises, but it is a lien on the property of so high a nature that it is not divested by a sale on judgments subsequently obtained against the mortgagor; yet if the mortgagee is in possession under the mortgage, and the condition of it be broken, it is no longer in the power of the mortgagor, nor of any one claiming his title by virtue of a sale on such a judgment, to recover the possession in ejectment. His only right in such a case, as we have before said, is to redeem the premises by paying the mortgage.
The. question of fact, therefore, whether John Milby and Hannah his wife, and Mary Turner, or either of them, were in possession of the property before or at the time when Rodney’s judgment was recovered, holding it as mortgagees under their mortgage, is the material point on which the case depends; because if such was their possession,they were then the owners and holders of the legal title; but if otherwise, then they were the mere holders of *327 a legal security, with a lien on the property through the mortgage for the payment of it. In the latter case, Mr. Rodney’s judgment would sell the premises subject to the mortgage; in the former, it would merely sell the right to redeem the property on the payment of it. And it will thus be seen that we regard the case as if Mary Turner ■were the defendant in the action, since the actual defendant is alleged to be her tenant; but whether he is or not, the plaintiffs must recover, if at all, on the strength of their own title, and the law invalidates that title to recover against any one, if the actual legal title can be shown to be outstanding in a mortgagee in possession after condition broken.
As to the point suggested in regard to the possession in this case being a mixed possession of the premises by the mortgagor and mortgagees, as tenants in common, the principle of law as to presumptions does not apply in such a case -as this; because there cannot he for this purpose a mixed possession between such parties as tenants in common. The possession was either in the mortgagor or in the mortgagees, as mortgagees; they could not both have possession in their opposite characters, and there could be in contemplation of law no mixture of possession as tenants in common between them in their relation of mortgagor and mortgagees; which would divest, in that case, the mortgagor’s actual possession of the property. And as to the relation of parent and child, though the presumption would be that the child was living with the parent when under his roof, the fact might he otherwise, by their reversing their mode of living. But it is, after all, a fact for the jury to determine on the evidence, as to the condition and position of the parties, with reference to which it was not for the Court to intimate any opinion. The Court would therefore submit the question of fact before stated, and leave it to the jury to say, from the evidence, whether Milby and wife, and Mary Turner, or either of them, was in possession of the house and lot, as mortgagees under the mortgage, at the time when Mr. Rodney recovered his *328 .judgment, in 1885, claiming and holding it as such; if so, then the plaintiff was not entitled to recover in the action; but if, on the other hand, Isaac Turner, the mortgagor, was in possession, notwithstanding they were living with him as members of his family, and continued in possession till. his death, in 1841, then the plaintiffs would be entitled to their verdict.
Verdict for the defendant, ¡y